Good morning, Peter Abrahams for Appellate National Union. This appeal presents two issues. The first issue is whether Hall's first amended complaint placed in issue anything other than a claim for benefits under a non-existent policy of temporary insurance. The second issue is, even if it did, whether the certificate of insurance issued to Robert Hall created a reasonable expectation that the National Union Group policy included a $1 million death benefit. Hall does not dispute the point in our opening brief that if the only issue presented by the first amended complaint was rights under a non-existent policy of temporary insurance, not only did the district court err in granting some readjustment for Hall, but the district court should have granted some readjustment for National Union. I wonder if you would look at the certificate, which is reproduced on page 9 of the red brief. Yes. Tell me what the heading means, $1 million combined, single. It's $1 million combined, single, limit occupational accident benefits, Your Honor. Yeah. What does that mean? Well, it's in the box called coverage limit, and under the very next box, description of coverage. It's in a box called what? Coverage limit. Coverage limit. And so there's a $1 million limit. Yes. But then there are words describing what that applies to. Well. And what is it that it applies to? That is the combined limit. If you look at the... Well, no, just go through those words and tell me what they mean. Well, I will tell you what it means, Your Honor. It says coverage limit, so you have to read it in conjunction with the next box. No, read it with the words that follow $1 million, which is the... Well, what it means, as I said... No, well, please. Yeah, okay. Please. Yes. Just take those words following $1 million and tell me what they mean. That means that the total benefits, the limit of the limits of the coverage are $1 million. That's what it means, Your Honor. Well, what does the single mean? Single, that means that there's a single, no matter how many coverages are implicated, whether it's survivor benefits, medical benefits, temporary disability, the single limit for all of those is $1 million. And what does the word following single mean? Single limit occupational accident benefit. That means that the total limit, no matter how many coverages are implicated, is $1 million. You don't get more than $1 million, no matter how many coverages are implicated. But it includes an occupational accident, right? Yes. As far as you can tell from the $1 million combined single limit occupational accident benefit, it's a limit on an accidental benefit, right? Correct. It's the total limits of the policy. For instance, if you... But say you were simply the only loss was temporary disability. The next box says that the maximum you get for temporary disability is $52,000. You don't get $1 million for that. And under survivor benefits... The next thing I see, we go down, we get the A, D, and D. Yes. And you think truckers know what that means. Well, I have two points, Your Honor. The first point is I think that the average person would understand what A, D, and D means, but... The average person would what? The average person would understand what A, D, and D means. The average person would know that? Yes. There's no really odd average people. But, you know, even if you disagree with me, Your Honor, go over to the right-hand side, and it says survivor benefits of $2,000 monthly for 8 years and 4 months, that comes up to $200,000. So, obviously, there is a death benefit at $200,000. Well, not a death benefit, you don't know. A, D, and D, what do they mean? Well, go to the right, Your Honor. Go to the right. It says survivor benefits of $2,000 monthly for 100 months. The point I was making, Your Honor, is I don't think you even... But that tells the reader, survivor benefits of $2,000. So what? Survivor benefits in lieu of what? That's the benefit. I mean, that's the... Benefit? That's the survivor benefit. A survivor benefit is obviously a death benefit. Well, yeah. You don't get it unless somebody died. I mean, I think that's... Well, that may be, but does that exclude anything else? Well, I mean, this whole box here underneath the coverage limit, the second limit description, coverage while under dispatch, lists the particular benefits. I mean, it makes no sense to say that the language in the coverage limit box provides a million-dollar benefit. That makes no sense because, you know, if you add up all of the... you know, that would mean that the temporary disability benefit would be a million dollars as well, and it's clearly not. No, it doesn't mean that. It just says that may be how it gets allocated. But here's the problem I have with this. The applicant hall filled out an application where it doesn't have any of that subsidiary breakdown. What it says is occupational accident limits, 1 million CSL. Okay, and he checks that box. Correct. Okay. And that, under the law, creates a temporary policy, correct? It's a binder once he pays the premium, which he did. Well, that was the issue presented by the First Amendment complaint, whether there was a temporary policy in effect. Well, no, no, that's not what I said. Okay. That, plus the premium, creates a temporary policy. Is that correct? I'm not saying whether it was in effect at the time of the accident. I'm saying it does create a temporary policy. Correct. Okay. So if he had died, paid the premium and died before anything else issued, where would your argument be on the breakdown that you're trying to suggest the qualifier AD&D provides? In other words, while that temporary policy was in effect, the only document that would have controlled here would have been the application. Isn't that correct? Well, if he had died before he was bound by the certificate, you would have to look at that to determine what the coverage was. Well. But that's not the issue before the court because the district court. I know it's not the issue, counsel. I know. I'm laying a foundation. Okay. So I'm trying to understand this in good faith. Okay. So bear with me. Sure. Okay. So as I understand, what they did is they pled it as a temporary policy as if it were in effect. That was the pleading. And then what they claimed in paragraph 18 is there is no conspicuous, plain, or clear statement of any lesser limit of liability or any reduction of benefits payable to Robert Hall's designated beneficiary ever communicated to Robert Hall prior to his death on March 6, 2007. That's paragraph 18 of the complaint. Correct? That's what it alleges. That's what it alleges. Okay. And then National Union said, no, that's not true. On the summary judgment it said, we sent him the certificate. Correct? Correct. Okay. So you were aware that the certificate was in play in responding to this complaint because you put the certificate in. So then the district court accepted your argument that it was no longer a temporary policy. The documentation, as the court specifically said, that was communicated to Mr. Hall was the application and the certificate. And then the district court proceeded to construe the certificate and found that the two documents taken together pursuant to the allocations of paragraph 18, she sustained the reading of the contract as coverage of $1 million because the limitations that were set forth in the certificate were not clear and unambiguous. So isn't that what we're looking at here on this review? The way I would frame it is we put the certificate in issue in order to defeat the claim of the policy of temporary insurance. I mean, the First Amendment complaint alleges, and the whole thrust of the complaint is you don't look at the national union policy or the certificate. Well, that was the thrust. But in any event, in order to address the substantive right of the plaintiff, the court properly, it seems to me, looked at the totality of the two documents that had been placed at issue by paragraph 18. Well, I think the only substantive right before the court was the claimed right to $1 million under a purported policy of temporary insurance. And what national union did in its summary judgment motion said, no, the policy has been issued. Mr. Hall was covered by the group policy, so the claim under a policy of temporary insurance simply is not well taken. And, you know, that was the only issue before the court. The First Amendment complaint very clearly tried to draw a distinction between the claimed policy of temporary insurance and the actual group policy. And I think a reasonable person reading this complaint would say, well, they must know what the coverage is under the group policy, so they're trying to get around it by claiming that the temporary policy is still in effect because the national union group policy had not been delivered to Mr. Hall. That was the issue framed by the First Amendment complaint. As we pointed out, had the First Amendment complaint put in issue whether the certificate provided adequate notice to Robert Hall and whether, therefore, there was different coverage than the coverage under the national union group policy, we would have presented the declaration of Carl Sadler, who would explain how, you know, in the custom and practice in the trucking industry, that the average trucker would understand these terms. But that wasn't an issue. We had no obligation to respond to a claim that had not been pled. And that's why we contend that the district court erred. Essentially, the complaint pled a claim for benefits under one policy, and the district court granted summary judgment on a totally different policy. At what point in the process did you realize that it was going to be imperative for you to explain the clarity of the language in the policy or in the certificate? Well, it came up in the plaintiff's motion for summary judgment. And as we've explained in our brief, you cannot use a summary judgment motion as a substitute for amending your pleadings. The only pleading, I mean, if you look at the inter- So you were aware of it in the process, the motion process? Yes, but as we've cited a number of cases in our briefs that explain that that's not sufficient, that if the plaintiff wanted to say, okay, we realize that our claim under a temporary policy of insurance fails, that really our claim is under the group policy, they should have amended. And if they thought the certificate provided inadequate notice to Robert Hall, then if that was the issue before the court, we had plenty of evidence, and the district court admitted in response to the Rule 59 motion that had Mr. Sadler's declaration been before her, that it would have affected, she would have come to a different result because it created a triable issue of fact. So as I say, the issue of whether the certificate provided adequate notice and whether there was coverage under the group policy simply was not before the court under the pleadings when summary judgment motions were filed. And we were basically responding to the complaint that was before us, not the theory upon which the district court granted summary judgment. So are you saying that if he had come in and pled that the reasonable expectation of coverage before he died was based on the documents that he received, which were the application and the certificate, that there would have been a different motion practice than actually occurred? Yeah, we would have said at least there's a triable issue of fact here because we have an expert in the trucking industry that will explain the custom and practice in the trucking industry. But we had no obligation to respond to a claim that had not been pled. I reserve the balance of my time. Okay, thank you. Good morning again. Jeffrey Ehrlich for the Applee, Miles Hall. Hi. I guess I'll start with the procedural issue. An overarching point I want to make is National Union keeps referring to it. We didn't they kept saying it was a temporary policy as if the form of the policy was the issue. I think that's how you pled it. Well, it's true, but it's the essence. That's like saying you alleged it was an oral contract, and we admitted we had a contract, but we think the contract was in writing. The issue, the important issue was there was a policy. Now, wait a minute, counsel. I looked at your pleadings last night just to be sure what was alleged, and what you alleged was a temporary policy. Right. And you attached the application and only the application as Exhibit 1, and that was the policy. And the only reference one could tease out of the complaint to anything beyond the application was Paragraph 18, which at least as I understand what the district court did, she considered it in response to your allegation that your client got no other documents to explain the coverage. So why are you fighting now on seizing upon temporary policy? That was your language in your complaint. I think that they're putting too much emphasis on the fact that the pleading was framed as, in my view, we have a contract. We think our contract is based on this binder because we don't think the second document was ever received. So the fundamental allegation is we have a million-dollar policy of coverage we applied for. We think it's represented by this application. The carrier's response is, no, we faxed you back the receipt. So there is a contract. You have the million-dollar contract. It's memorialized in this other document, not in the document you've pleaded. But I think it's somewhat disingenuous. Just to clarify, your allegation and your proffer in the summary judgment was that the certificate was not received? The summary judgment was, in our motion, yes, that it was a temporary. They were making that it's a temporary binder and there were no limitations on coverage expressed, and therefore that the policy is represented by the application. That's not my question. Did you take a position in the district court that Mr. Hall never received the certificate? Yes. In the summary judgment, that was what they tried to prove. And? The National Union had the better of that argument that they sent the certificate back 20 minutes after he applied for the coverage. Well, why wouldn't that be a rational reading of your complaint, that you're not basing your complaint at all on the certificate but rather on the temporary binder? I think the rational reading of the complaint is that we're claiming we paid for and received a million dollars in coverage. And we think the document that represents it is the binder. And then National Union moves for summary judgment saying, we acknowledge you had a million dollars in coverage. And it's represented by this certificate. Here are what your rights are. We performed. There's been no breach. So National Union knew from the moment the lawsuit was filed that there was a claim about a million-dollar policy. There was no mystery there. They knew they had their position about what that contract was represented by. They put their position forward in their motion. And in our summary judgment motion, which was filed virtually simultaneously, we said, first of all, we think that the rules for temporary insurance should apply. And second, if they don't, the certificate that you're relying on, National Union, is insufficient for the various reasons. In terms of National Union understanding what the claim was against them, it seems to me, this is where I'm leaning, so help me with this, it seems to me that the district court got a lot more out of paragraph 18 than you ever intended to allege. That paragraph 18 was alleging that there is an absence of a clear statement that limits liability in the binder. Your Honor, I would be disingenuous if I said that the district court didn't give us a very generous interpretation of the allegations in the complaint. All right. I'll go with that. It was generous. Yes. But I nevertheless think that the overarching issue was we claimed that we had paid for and received a million dollars in coverage. The carrier didn't dispute. The carrier's position wasn't that you didn't have a temporary policy and therefore we owe you zero. The carrier's position was we agree there's a million dollars in coverage, but this other document represents what your rights are and how the million dollars is divided up, and therefore we've performed in accordance with it. Well, if the evidence was that assuming that Mr. Hall got both the application, which he obviously did, and the certificate and the two documents were what were attached to your complaint as opposed to the application, would it have been a question of fact or are you saying it's irrelevant as to whether or not Mr. Hall would have understood that AD&D was a breakdown under the overall million dollars as to how much would be payable in the event of accidental death or dismemberment? I think that Mr. Hall's subjective understanding was irrelevant. I think that courts in California can't base coverage interpretations based on the subjective understanding of the particular insured that is before them because if it were to do that, then the same language would have different meanings depending on how sophisticated or how knowledgeable or how unusual a trucker was with his understanding. What about objectively reasonable understanding? That's what I understand the proffer is from National Union is their expert is that all of these guys in the trucking industry know full well that AD&D is actual accidental death and dismemberment. That was their declaration. They had an opportunity when in responding to their summary judgment motion, I'm sorry, when we put in our summary judgment motion, we said this term AD&D is not sufficiently clear. So they've got a motion for partial summary judgment seeking to adjudicate against them this death relief claim. And if they wanted to create a triable issue of fact, they could have submitted that declaration. They chose not to do that presumably because they had their own motion pending and they didn't want to inject triable issues of fact into the case because they were, for whatever reason, confident that they could win the case outright on summary judgment on there. They didn't want to essentially poison their own summary judgment by interjecting factual dispute. That's fine. That is a reasonable tactical approach. But having taken it, it's not appropriate to then say we had no idea and that if we'd only known more, we would have submitted the declaration. That issue was teed up in the motion practice. They had every opportunity submitted, and I just don't think you can rethink that kind of tactical consideration. So I think that ventilates the procedural issue. As far as the substantive issue, I think the two important issues to think about about reasonable expectations were the insured would only have two pieces of paper to look at, the application and the certificate. And the application doesn't have any of the restrictions on it. The application just has the application for occupational accident coverage and then it has $1,000,000 and $500,000 and $250,000. You take it off and you list your beneficiary, and then there are health questions. And then you get the certificate of membership insurance, which is not designed to do the lifting to explain what the policy contains. There's another document that was supposed to go to do that. The carrier was supposed to send this thick document called the description of coverage, which explains everything, which really is the insurance policy. This certificate is really a glorified receipt, and it uses acronyms that don't appear. They're not explained anywhere. In essence, National Union's argument is, well, maybe the certificate wasn't supposed to do this job, but it's close enough. Because if you tease out the meaning or if you use process of elimination about the things that are clear and try to narrow down what's left, you'd be left with figuring out it might be death, or the word survivor appears in one place on the right-hand side. And so you could figure it out. And the response that we have is that an insurance policy can't be, it isn't intended to be an exercise, a logic problem for the insurer, that the terms have to be laid out clearly. If the terms purport to limit what is promised, and I think here since the certificate is called a occupational, combined single limit occupational accident benefit, that if they want to limit that in some way, the million dollars, that's got to be done in clear, unambiguous languages within the working vocabulary of the average person. In the Hames versus Farmers case in California, the Supreme Court frames it as it must be clear and unmistakable. And this just doesn't meet that standard. It doesn't. It's not unmistakable. It's not clear. And the district court was correct in the process that went here. If the carrier had sent the document it was intending to send, but it just wasn't its policy to start sending them for another year when its parent figured out it wasn't sending them, this description of coverage would be a different issue. But with only the two documents at issue, there wasn't clear description of what the rights were, and therefore the carrier needs to pay the broader amount. We urge affirmation. Thank you. Under Rule 8, a plaintiff need not plead the details of a contract. The case law is quite clear that when a plaintiff does plead the details of a contract, he is bound by those allegations, and that's precisely what we're dealing with here. Now, I submit you would have to be a mind reader to figure out, reading the First Amendment complaint, that Paragraph 18 implicated the national union policy and the adequacy of the certificate. Oh, I don't think a mind reader. Is that what Judge Sanmartino was, a mind reader? Well, I mean. Is that what you're saying? I think that. I think she made it a very logical interpretation of what the pleading was. She disagreed that the temporary policy could be binding, and given the fact that, as it turned out, I presumably proved by your responses in summary judgment, you proffered the other document that provided the clarification and response, even to whatever reading she gave to Paragraph 18. She had the documents before. It's undisputed, apparently, that the real policy, with all of the true explanations, national union should have sent, which would have given and eliminated this whole controversy. They deliberately didn't send or negligently. So I'm just not understanding why we can find that Judge Sanmartino didn't come to a recent conclusion. Can I have 20 seconds to respond, Your Honor? Sure. The point is that the First Amendment complaint, the only reasonable reading of the First Amendment complaint is that it made a great effort to distinguish between the group policy and the temporary policy, and was telling the reader, don't even look at the group policy, because there's a policy of temporary insurance in effect. But that's not what he, he wasn't given the group policy. He wasn't, and that was the argument, that he wasn't given the group. But Judge Sanmartino rejected that argument. When was he given the group policy? He never received the group policy. The United Truckers Association received it. The argument was that supposedly the United Truckers Association was a sham organization, so delivery of the policy to the United Truckers Association was not sufficient to trigger coverage under the group policy. Did you say that in your response to the summary judgment? Yes, there was a whole discussion of whether or not the allegation that the United Truckers Association was a sham organization and whether that implicated the issues or not. That was discussed in our summary judgment papers. How do you respond to the point that you, on their motion for summary judgment, you could have moved to introduce your expert? Our response simply is that you're not obligated to respond. You're not obligated, but you have the opportunity. Well, you also have the opportunity, but the point is that we only had the obligation to respond to the allegations teed up by the complaint, and we specifically objected in opposition to the plaintiff's motion for summary judgment that they were seeking summary judgment on a claim that was not presented by the first amending complaint. Thank you. Okay. Thank you. Appreciate the argument. Case is submitted. Next case on calendar is Matthews v. National Football League Management Council. Good morning, Your Honors, and may it please the Court. My name is Drew Tulemelo, and I represent Bruce Matthews. I would like to reserve three minutes for questions. Okay. Watch your clock.
judges: Gritzner, Noonan, Fisher